IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

AMY L. MONROE a/k/a AMY L. )
McCAFFERTY and C. MARCUS )
McCAFFERTY, )
 )
      Plaintiffs, )
 ) Case No. 17-cv-248-JED-JFJ
v. )
 )
BANK OF AMERICA CORPORATION, )
f/n/a BANK OF AMERICA, N.A., and )
WILMINGTON SAVINGS FUND SOCIETY )
FSB, )
 )
      Defendants. )

## **OPINION & ORDER**

Before the Court are motions to dismiss by Defendant Bank of America, N.A. ("BANA") (Doc. 9) and Defendant Wilmington Savings Fund Society, FSB ("Wilmington").[1]

**I.  Background**

On or about March 20, 2006, Plaintiff Amy L. Monroe (a/k/a Amy L. McCafferty) executed the Bank of America Equity Maximizer Agreement and Disclosure Statement ("the Note"). (Doc. 2-2 at 4 of 43 [Pet. ¶ 6]). On the same day, Amy and C. Marcus McCafferty ("the McCafferty's") executed a mortgage ("the Mortgage") to secure the Note. (*Id*. [Pet. ¶ 7]). The real property described in the Mortgage is "Lot(s) 5, Block 8, Morningside Addition Subdivision, the

---

[1] Defendant Wilmington states that the mortgage at the center of this lawsuit is held as a matter of public record in the name of "Wilmington Savings Fund Society, FSB, doing business as Christiana Trust, not in its individual capacity, but solely as trustee for BCAT 2015-14BTT." Assuming it was the intention of the Plaintiffs to name the holder of the mortgage in this suit, Defendant Wilmington responds to the Complaint as "Wilmington Savings Fund Society, FSB, doing business as Christiana Trust, not in its individual capacity, but solely as trustee for BCAT 2015-14BTT." (Doc. 18 at 1, n.1).

City of Tulsa, Tulsa County, Oklahoma. (*Id*. at 39 of 43). Lot 5 is one of four lots that comprise the McCafferty's homestead at 1616 South Owasso Avenue. (*Id*. at 4-5 of 43 [Pet. ¶ 7]).

On March 10, 2011, BANA filed an action in the Tulsa Country District Court against the McCafferty's. (*Id*. at 5 of 43 [Pet. ¶ 8]). This lawsuit was dismissed without prejudice on October 17, 2012. (*Id*. [Pet. ¶ 9]). On June 24, 2016, counsel for the McCafferty's sent a letter to BANA's agent, Fay Servicing, LLC, demanding that BANA release the Mortgage of record. (*Id*. at 6 of 43 [Pet. ¶ 10]). Then, on June 30, 2016, Wilmington filed a new civil action in the Tulsa County District Court. (*Id*. [Pet. ¶ 11]). That lawsuit was dismissed on January 5, 2017, for failure to serve process. (*Id*. [Pet. ¶¶ 11-12]).

On April 12, 2017, Plaintiffs filed a Petition in the Tulsa County District Court seeking declaratory judgments regarding the validity of the Mortgage and the enforceability of the Note and Mortgage, as well as asserting a claim of slander of title. Defendants then removed this action to this Court on May 3, 2017, and moved to dismiss these claims under Fed. R. Civ. P. 12 (b)(6).[2]

## II. Legal Standards

"To survive a motion under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations 'to state a claim to relief that is plausible on its face.'" *Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual

---

[2] Defendants' removal of this action is based on diversity jurisdiction. Although the original Petition does not allege a specific amount in controversy (*see* Doc. 2-2 at 8 of 43), Defendant BANA asserts that if Plaintiffs are successful in their claims, the value of the declaratory relief alone would be up to $175,000 (the amount of the line of credit extended to Plaintiffs by the Note and Mortgage). (Doc. 2 at ¶ 14). "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, ___ U.S. ___, 135 S. Ct. 547, 553 (2014). The Court finds no reason to reject this amount-in-controversy allegation, and it has not been contested by the Plaintiffs.

content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a Rule 12(b)(6) motion, the court must liberally construe the pleadings, take all well-pleaded facts as true, and make all reasonable inferences in favor of the non-moving party. *Brokers' Choice of Am.*, 861 F.3d at 1105.

### III. Discussion

As a preliminary matter, the Court hereby takes judicial notice of the assignment of the Mortgage from BANA to Wilmington, as evidenced by the Assignment of Mortgage document submitted by Defendants. Pursuant to Fed. R. Evid. 201(b), the Court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Moreover, on a motion to dismiss, a court may consider a document that is central to the plaintiff's claim, even if the plaintiff does not incorporate the document by reference or attach it to the complaint. *Pace v. Swerdlow*, 519 F.3d 1067, 1072-73 (10th Cir. 2008). Here, Defendants have submitted copies of an Assignment of Mortgage dated September 16, 2015, and recorded with the Tulsa County Clerk. (Doc. 11-1; Doc. 19-1). This Assignment of Mortgage shows that BANA assigned all of its interest in the Note and Mortgage to Wilmington. (*See* Doc. 11-1 at 2; Doc. 19-1 at 2). Because the Court hereby finds that BANA no longer has an interest in the Note and Mortgage in question, Plaintiffs' first and second claims are hereby dismissed as to BANA.[3]

---

[3] Plaintiffs appear to concede that BANA is no longer a real party in interest as to both causes of action for a declaratory judgment. (Doc. 25 at 4). Plaintiffs insist, however, that BANA remains a real party in interest in regard to Plaintiff's slander of title claim. (*Id.*).

A.  **Plaintiffs' First Claim**

In regard to Plaintiffs' first claim, in which they seek a declaratory judgment regarding the validity of the Mortgage, Wilmington argues that the allegedly erroneous property description in the Mortgage does not render it unenforceable.

Under certain circumstances, Oklahoma law allows for the reformation of a mortgage when it misdescribes the property covered by the mortgage. *See Clement Mortg. Co. v. Lewis*, 253 P. 88 (Okla. 1926) (allowing reformation when the record showed that the mortgagor and mortgagee both intended the mortgage to cover lots 1, 2, and 3 of block 69 instead of lots 1 and 2 of block 68); *see also Stillwater Nat'l Bank & Tr. Co. v. Woolley*, 823 P.2d 374, 377 (Okla. Civ. App. 1991) ("Thus even where a mortgage misdescribes the property intended to be mortgaged, the mistake is a matter to be corrected by a proper proceeding . . . ."). In Oklahoma, "[t]he rule is that mere indefiniteness in the description of land in a mortgage, or an error of description, although it may be such as to render the instrument prima facie inoperative, does not necessarily invalidate it; but evidence of extrinsic facts relative to the situation of the parties and the circumstances attending the transaction may be received to impart certainty to the description." *Varner-Collins Hardware Co. v. New Milford Sec. Co.*, 153 P. 667, 669 (Okla. 1915).

Because an erroneous property description does not necessarily invalidate a mortgage under Oklahoma law, there is no legal basis for the declaratory judgment Plaintiffs seek in their first cause of action. Accordingly, the first cause of action must be dismissed.

B.  **Plaintiffs' Second Claim**

In Plaintiffs' second claim for relief, they seek a declaratory judgment finding the Note and Mortgage unenforceable due to the operation of the applicable statute of limitations. Plaintiffs assert that in the petition filed by BANA in the 2011 lawsuit, BANA expressly invoked BANA's

acceleration rights under the Note and Mortgage. (Doc. 2-2 at ¶ 8).[4] This acceleration, argues Plaintiffs, triggered the running of the statute of limitations. Applying a five-year statute of limitations, Plaintiffs argue that the Note and Mortgage are now unenforceable.

In *Union Central Life Insurance Co. v. Adams*, the Oklahoma Supreme Court provided the following statement of law:

> Where the note and mortgage provides for acceleration, the statute of limitation does not begin to run from date of partial default, but only from the maturity of the full principal or of the last installment of the principal, <u>unless the creditor elects to declare the whole amount due</u>.

38 P.2d 26, 28 (Okla. 1934) (emphasis added). The Court in *Union Central* went on to determine whether a mortgagee had, in fact, elected to accelerate the maturity of a note. *See id*. at 29.

*Union Central* was later overturned in part by the Oklahoma Supreme Court in *Oklahoma Brick Corp. v. McCall*, 497 P.2d 215 (Okla. 1972). In *McCall*, the court provided that, contrary to

---

[4] The 2011 petition contains the following assertions:

"7. That said EMA [Equity Maximizer Agreement and Disclosure Statement] and mortgage provide that if default be made in the payment of any of the monthly installments, or on failure or neglect to keep or perform any of the other conditions and covenants of the mortgage, that the entire principal sum and accrued interest, together with all other sums secured by said mortgage, shall at once become due and payable, at the option of the holder thereof, and the holder shall be entitled to foreclose said mortgage and recover the unpaid principal thereon and all expenditures of the mortgagee made thereunder, with interest thereon, and to have said premises sold and the proceeds applied to the payment of the indebtedness secured thereby, together with all legal and necessary expense and all costs.

8. That default has been made upon said EMA and mortgage in that the installments due the 10th day of August, 2010, and thereafter have not been paid.

. . .

10. That after allowing all just credits there is due Plaintiff [BANA] on said EMA and mortgage the sum of $174,996.31, with 2.99% interest per annum thereon, or as adjusted by the Note and Mortgage, from the 10th day of July, 2010, until paid; said abstract and title exam expense; late fees of $130.02; corporate advances of $95.00; the further sum of a reasonable attorney's fee, and for all costs of this action, for which amounts said mortgage is a first, prior and superior lien upon the real estate and premises above described."

(Doc. 25-1 at ¶¶ 7-8, 10).

the statement of law in *Union Central*, the statute of limitations begins to run on an installment note against each installment on the day following its maturity. *Id*. at 217. The court noted that the statement of law in *Union Central* was "not warranted by the facts and not necessary to the decision in the case," since the central issue in *Union Central* concerned the possible acceleration of a note. *Id*. at 216. *McCall*, thus, clarified how the statute of limitations generally applies to installment notes, but it did not disturb the rule that an election to accelerate the maturity of a note causes the statute of limitations to begin to run against the whole amount due.

This interpretation is supported by *Bankers Trust Co. of California, N.A. v. Wallis*, 280 P.3d 974 (Okla. Civ. App. 2012). In *Wallis*, two homeowners executed a note and mortgage payable in monthly installments. *Id*. at 975. The bank initially filed a foreclosure suit on February 29, 2000. *Id*. This original foreclosure suit was dismissed without prejudice for failure to prosecute, and a new case was filed in May 2005. *Id*. The trial court in the new case determined that the filing of the initial suit accelerated the due date of the debt. *Id*. at 977 n.10. On appeal, the Oklahoma Court of Civil Appeals applied the statute of limitations starting from the February 29, 2000, "accelerated due date" to determine that the 2005 case was timely filed. *Id*. at 976 n.8. Although the note and mortgage had contemplated installments through 2012, *see id*. at 976, this did not prevent the statute of limitations from beginning to run when the bank elected to accelerate the due date for the entire balance.

Defendant Wilmington's argument that the alleged acceleration in 2011 did not cause the statute of limitations to begin to run is contrary to Oklahoma law. Accordingly, Defendant Wilmington's motion to dismiss Plaintiffs' second claim must be denied.

Upon review of the case law, the Court suspects that a six-year statute of limitations, codified at *Okla. Stat.* tit. 12A, § 3-118(a), may apply to this case. *See Wallis*, 280 P.3d at 976 n.8

6

(applying the six-year statute of limitations); *Chico Enters., Inc. v. Botts*, 931 P.2d 81, 83 (holding that the mortgagee's right to enforce its mortgage was extinguished by the passage of six years after the promissory note became due). The Court hereby requests the parties to submit briefing on the issue of whether a five- or six-year statute of limitations applies under Oklahoma law. The parties shall submit briefs of no longer than ten (10) pages before April 10, 2018.

Because the Court's evaluation of the Plaintiffs' slander of title claim depends in part on what statute of limitation applies, the Court will reserve ruling on this aspect of Defendants' motions to dismiss.

For the foregoing reasons, Defendant BANA's Motion to Dismiss (Doc. 9) is **granted in part**. Defendant Wilmington's Motion to Dismiss (Doc. 18) is **granted** as to Plaintiffs' first claim and **denied** as to the second claim. The Court is reserving ruling on Defendants' motions to dismiss Plaintiffs' third claim pending additional briefing.

ORDERED this 28th day of March, 2018.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE