IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

AMY L. MONROE a/k/a AMY L. )
McCAFFERTY and C. MARCUS )
McCAFFERTY, )
                                    )
        Plaintiffs, )
                                   )    Case No. 17-cv-248-JED-JFJ
v. )
                                   )
BANK OF AMERICA CORPORATION, )
f/n/a BANK OF AMERICA, N.A., and )
WILMINGTON SAVINGS FUND SOCIETY, )
FSB, )
                                   )
        Defendants. )

## OPINION & ORDER

**I.    Background**

The following facts are undisputed by the parties. In 2006, Amy L. Monroe (a/k/a Amy L. McCafferty) executed a promissory note payable to Bank of America, N.A. ("BANA") in the principal sum of $175,000.00. (Doc. 2-2 at 10-19 of 43). Amy and C. Marcus McCafferty ("the McCafferty's") then executed a mortgage to secure the note. (*Id*. at 20-39 of 43). On March 10, 2011, BANA filed a foreclosure action ("the 2011 Action") in the Tulsa County District Court against the McCafferty's. (Doc. 25-1 at 2 of 37). BANA's petition in this 2011 Action contained the following assertions:

> 7. That said EMA [the promissory note] and mortgage provide that if default be made in the payment of any of the monthly installments, or on failure or neglect to keep or perform any of the other conditions and covenants of the mortgage, that the entire principal sum and accrued interest, together with all other sums secured by said mortgage, shall at once become due and payable, at the option of the holder thereof, and the holder shall be entitled to foreclose said mortgage and recover the unpaid principal thereon and all expenditures of the mortgagee made thereunder, with interest thereon, and to have said premises sold and the proceeds applied to

the payment of the indebtedness secured thereby, together with all legal and necessary expense and all costs.

8. That default has been made upon said [note] and mortgage in that the installments due the 10th day of August, 2010, and thereafter have not been paid.

. . .

10. That after allowing all just credits there is due Plaintiff [BANA] on said [note] and mortgage the sum of $174,996.31, with 2.99% interest per annum thereon, or as adjusted by the Note and Mortgage, from the 10th day of July, 2010, until paid; said abstract and title exam expense; late fees of $130.02; corporate advances of $95.00; the further sum of a reasonable attorney's fee, and for all costs of this action, for which amounts said mortgage is a first, prior and superior lien upon the real estate and premises above described."

(Doc. 25-1 at 3-4 of 37). The 2011 Action was dismissed without prejudice on October 17, 2012.

In 2015, BANA assigned all of its interest in the mortgage to Wilmington Savings Fund Society, FSB, doing business as Christiana Trust, not in its individual capacity, but solely as trustee for BCAT 2015-14BTT ("Wilmington"). (Doc. 19-1). Then, on June 30, 2016, Wilmington filed a new foreclosure action ("the 2016 Action") against the McCafferty's in the Tulsa County District Court. That lawsuit was dismissed on January 5, 2017, for failure to serve process.

On April 12, 2017, Plaintiffs filed a petition in the Tulsa County District Court seeking declaratory judgments regarding the validity of the mortgage and the enforceability of the note and mortgage, as well as asserting a claim of slander of title. (Doc. 2 at 3-9 of 43). Defendants then removed the action to this Court on May 3, 2017, and moved to dismiss these claims under Fed. R. Civ. P. 12 (b)(6). (Doc. 9, 18). This Court granted BANA's motion to dismiss as to all three of Plaintiffs' claims and Wilmington's motion to dismiss as to Plaintiffs' first and third claims. (Doc. 30, 37). The second claim for relief, in which Plaintiffs seek a declaratory judgment regarding the enforceability of the note and mortgage, has survived as against Wilmington. (Doc. 37 at 4-5).

**II.    Show Cause Order**

On May 18, 2018, the Court ordered Defendant Wilmington to show cause why summary judgment should not be entered in favor of Plaintiffs on their second claim. (Doc. 38). The Court had already determined that, under Oklahoma law, an election to accelerate a debt causes the statute of limitations to begin to run against the whole amount due. (*See* Doc. 30 at 4-6). Moreover, the Court had concluded that a six-year statute of limitations applied to both the note and mortgage. (*See* Doc. 37 at 3). Thus, the Court reasoned, if the debt was accelerated in 2011 when BANA first initiated a foreclosure action against Plaintiffs, then the note and mortgage would no longer be enforceable. It appeared to the Court that the issue of whether the debt was accelerated in 2011 was not genuinely in dispute, since BANA demanded the entire principal sum and accrued interest in its 2011 petition for foreclosure. *See Union Central Life Ins. Co. v. Adams*, 38 P.2d 26, 29 (Okla. 1934), *overruled in part on other grounds by Okla. Brick Corp. v. McCall*, 497 P.2d 215 (Okla. 1972).

Both parties have had an opportunity to brief the Court on this issue. (*See* Doc. 39, 40, 41). In its response brief, Wilmington revealed that it filed a new foreclosure action ("the 2017 Action") on December 18, 2017, in the Tulsa County District Court. (Doc. 39-1). Wilmington argues that Oklahoma's "savings statute" gave Wilmington one year from the dismissal of the 2016 Action to re-file a foreclosure action against the McCafferty's.

The cited savings statute, *Okla. Stat.* tit. 12, § 100, provides:

> If any action is commenced within due time, and a judgment thereon for the plaintiff is reversed, or if the plaintiff fail in such action otherwise than upon the merits, the plaintiff, or, if he should die, and the cause of action survive, his representatives may commence a new action within one (1) year after the reversal or failure although the time limit for commencing the action shall have expired before the new action is filed.

A party seeking to avail itself of *Okla. Stat.* tit. 12, § 100 must demonstrate four things: (1) that the original action was timely, (2) that the action terminated for some reason other than its merits, (3) that the party asserting the statute qualifies as one of the parties entitled to revive the action, and (4) that the new action is substantially the same as the original. *State Farm Mut. Auto. Ins. Co. v. Payne*, 408 P.3d 204, 206 (Okla. 2017). Plaintiffs do not dispute that Wilmington filed this 2017 Action within one year of the dismissal of the 2016 Action and that the 2016 Action was dismissed for a reason other than its merits. Instead, Plaintiffs argue that the savings statute cannot apply to the filing of a third civil action following two dismissals. Relatedly, Plaintiffs contend that Wilmington cannot "stand in the shoes" of BANA, which filed the original 2011 Action.

Plaintiffs here are mistakenly treating the 2011 Action, brought by BANA, as the "original action" for the purpose of § 100, when the true focal point is the last action brought within the statute of limitations—the 2016 Action. The Supreme Court of Oklahoma has explained that § 100 affords parties the opportunity to refile their action one time after it has failed otherwise than upon the merits and after the statute of limitations has run. *Ashby v. Harris*, 918 P.2d 744, 747 (Okla. 1996). Contrary to Plaintiffs' contentions, Wilmington's 2017 refiling is not time-barred because it is its <u>first</u> refiling of the foreclosure action after the statute of limitations ran.

An Oklahoma Court of Civil Appeals case, *Hug v. James*, illustrates this point. In *Hug*, a case had been dismissed on two prior occasions, but only the third petition was filed outside of the statute of limitations. 197 P.3d 22, 25-26 (Okla. Civ. App. 2008). Because this third petition was filed within one year of the dismissal of the previous petition, the savings statute applied and the suit was not subject to dismissal. *Id*. The plaintiff in *Hug*, like Wilmington in this case, only relied on § 100 once because the first two suits were filed within the statute of limitations period.

4

This 2017 Action is Wilmington's first use of the savings statute to "extend" the statute of limitations. The 2016 Action was timely filed, as previously determined by the Court, and the 2017 Action was filed within one year of the dismissal of the 2016 Action. Moreover, Wilmington is the same party that brought the 2016 Action, so there is no question that Wilmington qualifies as a party entitled to revive the action. *Payne*, 408 P.3d at 206-07 ("[O]ur test for whether a subsequent plaintiff qualifies as 'the plaintiff' for purposes of [§ 100] focuses not on whether the subsequent plaintiff is identical to the one before, but on whether the two entities are 'substantially the same.'"). Thus, the savings statute applies, and the 2017 Action is not barred by the statute of limitations.

Under Fed. R. Civ. P. 56(f), a court may consider summary judgment on its own after giving the parties notice and a reasonable time to respond. Here, the parties were put on notice and were given an opportunity to submit briefs and evidence to establish that material facts remain in dispute. Although a new fact—the fact of Wilmington's 2017 refiling of the foreclosure action—was presented to the Court, this fact is not disputed by Plaintiffs. As such, the only remaining issue is whether this most recent foreclosure suit is barred by the applicable statute of limitations, thus rendering the note and mortgage unenforceable. As explained above, the Court finds that the 2017 foreclosure action is <u>not</u> barred by the statute of limitations because it falls within Oklahoma's savings statute. For this reason, Defendant Wilmington must prevail as a matter of law on Plaintiffs' second claim for relief. The Court hereby grants summary judgment in favor of Defendant Wilmington, pursuant to Fed. R. Civ. P. 56(f).

ORDERED this 31st day of July, 2018.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE